THE PEOPLE OF THE VIRGIN ISLANDS,
Plaintiff
v.
HARRY BEATTY

Criminal No. 18-1944

District Court of the Virgin Islands

Div. of St. Croix at Christiansted

June 7, 1944

## MOORE, *Judge*

There has been a tremendous amount of hysteria about this case because of the fact that the defendant, Harry Beatty, belongs to the white group, and the deceased, Andrew Thompson, who was killed, is a colored man. This community being ninety-five per cent colored, it has apparently made this a class issue, and the feeling is therefore intensified. Although the Court cannot help being mindful of the intensity of this feeling on the part of the deceased's group, nevertheless, it has no part whatever in the decision of the guilt or innocence of the accused. This court realized that situation when the defendant waived a jury and asked the Court to hear this case. Because of that very feeling, the Court felt that this defendant might not get a fair trial by a jury, and it became the duty of the Court to hear this case instead of calling a jury in this community on its own motion.

■ ■ Our statute (1921 Code, Title V, ch. 12, § 1; 5 V.I.C. § 3601) provides that when the defendant waives a jury, the Court shall hear the case without a jury except that the Court, in its own discretion, may call a jury on its own motion. Right here I wish to call attention to the fact that a member of the deceased's family came to me this morning to tell me that the family did not wish the defendant to be allowed to waive the jury. I did not hold that member of the family in contempt because I realized that he did not know that he was doing wrong in coming to the Court. However, this very feeling on the part of the deceased's family, and the community in general, that the jury would definitely convict the defendant, regardless of the evidence, is the strong reason why this court feels that it was its duty to hear this case in order that it might be determined solely upon the evidence and that outside sentiment would have no part whatever in the case. I want, however, to take this occasion to let the

48

people know that it is highly improper to come to the judge's chambers with any request, except such requests are made through their respective lawyers.

 I have considered the evidence in this case very carefully. There were three witnesses to the killing: the defendant and two other friends of the defendant who were riding in the car with him, to wit: Hugh C. Benoit and Wilton Brousard. The latter two witnesses were called by the prosecution, and both stated substantially as follows:

That the defendant stopped his car and walked over to the field where the deceased was standing with a shotgun in his hand; that he, Harry Beatty, demanded that the deceased, Andrew Thompson, turn over the shotgun to him; that the deceased refused to do so, and that the deceased then and there turned around and struck the defendant in the ribs with the gun. That the defendant then grabbed the barrel of the shotgun with the deceased holding onto the stock of it; that when the defendant saw that he could not wrest the shotgun away from the deceased, he then reached in his pocket and took out his revolver and struck the deceased over the head with it in order to make him release the shotgun; that the deceased then succeeded in pulling the shotgun away from the defendant and raised the barrel pointing it at the defendant to shoot him; that the defendant then, with his revolver in his hand, with which he had previously hit the deceased instead of shooting him when trying to take the gun away from him, shot with the revolver from hip position before the deceased could pull the trigger of the shotgun. This was the only shot fired which hit the deceased over the left eye killing him instantly.

This is the testimony of The People's two witnesses and this is the testimony of the defendant himself. There is no other theory of how this shooting occurred presented in

49

evidence by either side. Therefore, the only evidence which the Court has before it, both from The People's two witnesses and from the defendant, shows that at the time the defendant shot the deceased, Andrew Thompson, the deceased had raised his gun in the act of shooting the defendant, Harry Beatty. It is possible that the shooting may not have occurred in the manner in which it was described. I have taken into consideration the fact that these two witnesses live in the same house with the defendant; that their home is in Louisiana where the life of Negroes is cheap; that the defendant may have had the same feeling about the life of a Negro. However, there is nothing in the evidence to contradict this testimony, and certainly this court would not be warranted under any theory of law to throw out the testimony of witnesses merely because of the section of the country from which they come. I have been in Louisiana and, as a Negro myself, I know the feeling toward Negroes in Louisiana, but no court can decide a case except upon the evidence which is presented to it. Unrestrained mob hysteria in a colored community against white people is just as dangerous and reprehensible as unrestrained mob hysteria in the South against Negroes. Two wrongs do not make a right. I was born in the heart of Mississippi. I know well the injustices against colored people there, but if Senator Bilbo of Mississippi, or Congressman Rankin of Mississippi, had a case in this court, they would receive justice according to the evidence, and not according to the action of the white people in Mississippi against Negroes. That is the way it must be in a court of justice, and no mob hysteria should ever make it otherwise. Upon the evidence, I can do one of two things, either give credence to the evidence which is presented to this court, and which shows the defendant to have acted in self-defense, or reject that evidence. If the Court should take the former view, then I must acquit the defendant.

If I take the latter view, then there is no evidence before this court and the prosecution would have proved no case whatever, and I would still have to acquit the defendant. Under no circumstances can this court adopt any speculative theory of what happened different from the theory shown by the evidence before the Court and which different theory is supported by no evidence whatever. Even if this killing occurred in a different manner from that described to the Court and there is absolutely no evidence of any different manner, this Court cannot build up a theory of what happened upon its or the prosecution's conjecture of what might possibly have happened, and not upon evidence. Consequently, this Court must find that the defendant acted in self defense, provided he was in the discharge of his duty and justified in taking that gun away from the deceased.

■■ Therefore, this brings us to the only other question in the case, namely, what authority did the defendant have to take this gun away from the deceased. It has been admitted and stipulated by both sides, and certificates presented in evidence, that the defendant, Harry Beatty, is a duly appointed constable. Our statute provides that the duties of a constable are the same as those of a patrolman. Our statute■ also provides in the section on unlicensed firearms, as follows:

That a patrolman (or constable) shall confiscate unlicensed firearms when found, and upon such confiscation, the person owning the said firearms, may within fourteen (14) days show his justification for the possession of the firearms, and if he fails to show any such justification, then they are to be permanently confiscated. Consequently, it seems clear to this court that it was the duty of the de-

fendant to demand the surrender of this unlicensed shotgun, which the evidence has shown was unlicensed and for which the police had been looking for some time. Consequently, he was in the performance of his duties in demanding the surrender of the firearm which the deceased had in his possession at that time. Some question was raised by the prosecution as to the regularity or the fact as to whether the defendant's gun, as a constable, was duly and properly licensed. The evidence shows that he was given authority to purchase this gun, although it may not have been properly registered. However, the law is very clear that even if he had no authority to have a gun but, having one, used it in self-defense, that the lack of authority for having the gun would not deprive him of the defense of self-defense.

■ If there were two theories to this case, namely, testimony tending to show that the defendant acted in self-defense, and also the testimony tending to show that the defendant did not act in self-defense, the defendant would be entitled to the benefit of the doubt; but in this case there is no evidence whatever tending to show that the defendant did not act in self-defense. The only evidence in the case is that of the three eye witnesses to the effect that the defendant only shot after the deceased had raised the shotgun to shoot the defendant. Consequently, the one and only theory supported by evidence is that the defendant acted in self-defense in the performance of his duty. There is no evidence whatever to support any other finding.

It is therefore the finding and judgment of this court that the defendant, Harry Beatty, is not guilty, and it is, therefore, ordered, adjudged and decreed that the defendant be released from custody, and that his sureties be discharged.